U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 NOV 13 A 8:53

CLERK
BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| TYLER BAKER, individually and on behalf of The University of Vermont Medical Center 403(b) Plan,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF VERMONT MEDICAL CENTER, INC., the BOARD OF TRUSTEES OF THE UNIVERSITY OF VERMONT MEDICAL CENTER, the DC FIDUCIARY INVESTMENT COMMITTEE, and JOHN DOES 1–45,<br><br>Defendants. | ) | Case No. 2:23-cv-87 |

**ORDER ON MOTION FOR JURY TRIAL**
**(Doc. 97)**

This ERISA case[1] concerns a claim of excessive fees levied against retirement savings of employees of The University of Vermont Medical Center ("UVMMC"). The court previously denied a motion to dismiss (*see* Doc. 46), and the case has progressed to a motion to certify a class of these employees (*see* Doc. 99). At the same time that Plaintiff filed the class-certification motion, he also filed a "Motion for Jury Trial." (Doc. 97.) The court heard argument on both class certification and on the question of a jury trial on September 23, 2026. This Order addresses the latter issue.

[1] ERISA stands for the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

**Background**

Plaintiff filed the complaint in this case on May 10, 2023. (Doc. 1.) The allegations are summarized in the court's prior order dated January 30, 2024, familiarity with which is presumed. (*See* Doc. 46 at 2–9.) In brief, Plaintiff alleges that Defendants allowed excessive administrative expenses by "imprudently retain[ing] numerous legacy investment options" and also failed to prudently minimize recordkeeping fees. (Doc. 1 ¶¶ 58, 69.)

For relief, Plaintiff seeks:

- a declaration that Defendants breached their fiduciary duties under ERISA;
- an order "compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations";[2]
- an order requiring disgorgement of "all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, or a surcharge against the Company Defendant";
- "[a]ctual losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses";[3]

---

[2] It appears that this requested relief is brought under 29 U.S.C. § 1132(a)(2). (*See* Doc. 1 ¶¶ 129, 137.)

[3] It appears that this requested relief is brought under 29 U.S.C. § 1132(a)(2). (*See* Doc. 1 ¶ 129.)

- "[a]n order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities"; and
- "[o]ther equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties."

(*Id.* at 45.)

The complaint does not include a demand for a jury trial, nor did Plaintiff file or serve a written demand for a jury trial within 14 days of service of that pleading. Plaintiff's Motion for Jury Trial filed April 6, 2026, is the earliest request for a trial by jury filed in this case.

## Analysis

Plaintiff's Motion for Jury Trial seeks a trial by jury under Fed. R. Civ. P. 39(a)(2) and 39(b). (Doc. 97 at 6.) Defendants oppose a jury trial for two reasons. First, Defendants assert that Plaintiff waived the right and that Plaintiff is not entitled to relief from the waiver. (Doc. 105 at 7–9.) Second, Defendants argue that there is no right to a jury trial under ERISA or under the Seventh Amendment. (*Id.* at 9–15.)

### I. Waiver

Plaintiff does not dispute that there is no written demand for a jury trial in the complaint and that no such demand was served within 14 days of service, as is required to properly demand a jury trial under Fed. R. Civ. P. 38(b). Citing Fed. R. Civ. P. 38(d)—"A party waives a jury trial unless its demand is properly served and filed"—Defendants argue that Plaintiff has waived the right. (Doc. 105 at 7.) Defendants recognize that an exception to waiver appears in Rule 39(b): "Issues on which a jury trial is not properly demanded are to be tried by the court.

*But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded*." Fed. R. Civ. P. 39(b) (emphasis added). The parties disagree whether the court should grant relief from the waiver under Rule 39(b).

Initially, the parties dispute the breadth of the court's discretion to order relief under Rule 39(b). Defendants argue that the court's discretion is "severely constrained" (Doc. 105 at 7) and that relief should be ordered only upon Plaintiff's showing of "exceptional circumstances" that might excuse a failure to make a timely demand. *In re AMR Corp.*, 506 B.R. 368, 378 (Bankr. S.D.N.Y. 2014); *see also Noonan v. Cunard S.S. Co.*, 375 F.2d 69, (2d Cir. 1967) (Friendly, J.) ("[T]he area open to the judge's discretion [under Rule 39(b)] has shrunk to determining whether the moving party's showing beyond mere inadvertence is sufficient to justify relief."). Plaintiff maintains that *AMR* and *Noonan* do not "negate the Court's inherent discretion to order a jury trial" and that the court in this case should grant relief under Rule 39(b). (Doc. 112 at 4–5.)

There is indeed a difference of opinion among the circuit courts as to the standards applicable to a Rule 39(b) motion. "Several courts have stated that a Rule 39(b) motion for a jury trial should always be granted unless there is a strong and compelling reason for denying it." 8 Moore's Federal Practice – Civil § 39.31[4][a] (3d ed.) (citing cases from the Fifth, Seventh, Eighth, and Tenth Circuits). Other courts adopt a more restrictive view, holding that such motions should be granted "only when the moving party shows adequate and persuasive grounds for granting the motion." *Id.* § 39.31[4][b] (citing cases from the Fourth, Ninth, and D.C. Circuits). The *Noonan* decision places the Second Circuit in the latter category. *See id.* (citing *Noonan*). Thus, to obtain relief under Rule 39(b), Plaintiff would need to make a showing that the failure to properly demand a jury trial was "beyond mere inadvertence." *Noonan*, 375 F.2d

at 70; *see also, e.g.*, *Higgins v. Boeing Co.*, 526 F.2d 1004, 1006 n.2 (2d Cir. 1975) (per curiam) ("[D]espite the discretionary language of Rule 39(b) some cause beyond mere inadvertence must be shown to permit granting an untimely demand."); *Capak v. Epps*, 673 F. Supp. 3d 425, 430 (S.D.N.Y. 2023) ("[M]ere inadvertence alone is an inadequate basis for allowing an untimely filing of a jury demand.").[4]

Here, Plaintiff does not offer any argument that the failure to file a timely jury demand was the result of anything other than inadvertence. Absent such a showing, *Noonan* would appear to put Rule 39(b) relief outside the bounds of discretion authorized in the Second Circuit. *See Raymond v. Int'l Bus. Machs. Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (per curiam) ("[I]nsofar as plaintiff offers no explanation beyond mere inadvertence for his failure to timely serve the jury demand, the district court erred under *Noonan* in granting plaintiff's Rule 39(b) motion."). However, *Raymond* suggests that the court should also consider whether there are "appropriate circumstances," *id.*, for granting a post-deadline extension of time to demand a jury trial under Fed. R. Civ. P. 6(b)(1)(B)'s excusable-neglect standard.

Rule 6(b) of the Federal Rules of Civil Procedure concerns extensions of time; the rule states:

> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> > (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> >
> > (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

[4] The Second Circuit has recognized an exception to this requirement in the context of cases removed from New York state court, where practice allows a jury demand to be filed at any stage of the proceeding. *Capak*, 673 F. Supp. 3d at 430. That exception does not apply here.

> (2) Exceptions. A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b). As indicated in the text, relief under Rule 6(b)(1)(B) must be applied for "on motion." The court elects to treat Plaintiff's Rule 39 motion as also seeking relief under Rule 6(b)(1)(B). Doing so is consistent with achieving a "just, speedy, and inexpensive determination," Fed. R. Civ. P. 1, particularly because it would be wasteful to require Plaintiff to submit a second formal motion seeking the same relief under Rule 6(b)(1)(B) and because the parties have already provided briefing as to the merits of whether the circumstances here warrant relief from the waiver.

Rule 6(b)(1)(B) allows for retroactive extension of the time—including the time to demand a jury[5]—upon a showing of "good cause" and "excusable neglect." *See Dean v. Town of Hartford*, No. 22-cv-225, 2025 WL 966704, at *8 (D. Vt. Mar. 31, 2025) (noting both standards). "Good cause" is a "non-rigorous standard," and—in contrast to the inadequacy of inadvertence under Rule 39(b) as interpreted in *Noonan*—even inadvertence "*can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(1)(B)." *Alexander v. Saul*, 5 F.4th 139, 154 (2d Cir. 2021) (quoting *Petaway v. Osden*, 827 F. App'x 150, 152 (2d Cir. 2020) and *Manigault v. ABC Inc.*, 796 F. App'x 13, 15 (2d Cir. 2019)). Thus—insofar as Plaintiff has supplied no argument or evidence to indicate that the reason for failing to properly demand a jury under Rule 38 was anything other than inadvertence—the court proceeds to consider whether the circumstances in this case meet the "excusable neglect" standard.

Although the court is construing Plaintiff's motion as seeking relief under Rule 6(b)(1)(B), the court finds it helpful to structure the analysis with reference to the factors

---

[5] *See Raymond*, 148 F.3d at 66 (noting that the 14-day period specified in Rule 38(b) is not among the excepted deadlines listed in Rule 6(b)(2)).

relevant to a motion under Rule 39(b). Those factors include "whether (1) the state court has broad discretion to grant jury demands,[6] (2) the action is traditionally tried by juries, (3) the parties proceeded assuming there would be a jury trial, and (4) granting the demand would unfairly prejudice the non-moving party." *Capak*, 673 F. Supp. 3d at 431.

**A. Traditionally Tried by Juries**

ERISA became law in 1974. Disputes arose soon afterwards as to whether a trial would be before a judge or a jury. *See* Note, *The Right to Jury Trial in Enforcement Actions Under Section 502(A)(1)(B) of ERISA*, 96 Harv. L. Rev. 737 (1983) ("Litigants in enforcement actions under the Employee Retirement Income Security Act of 1974 (ERISA) frequently clash over whether trial is to be to a judge or to a jury." (footnote omitted)). Moreover, very few ERISA cases have concluded with a trial; most such cases have been resolved on pretrial motions or have settled.

It is therefore difficult to say whether ERISA cases are "traditionally" tried by juries. As discussed in more detail below, the law is unsettled as to whether an ERISA litigant is entitled to a jury trial, and the unsettled state of the law has caused some courts to conclude that ERISA cases are not "of the type traditionally tried by a jury." *Sacerdote v. New York Univ.*, No. 16 Civ. 6284, 2024 WL 4227186, at *4 (S.D.N.Y. Sept. 18, 2024). The court notes that

[6] This factor is important in removed cases where Fed. R. Civ. P. 81(c)(3) applies; in such cases, it may be appropriate to "read into" Rule 81(c) a state-law discretionary right to relief from failure to demand a jury trial. *Higgins*, 526 F.2d at 1007. In contrast, this is not a removed case, so this factor may be inapplicable here. To the extent that this factor does apply in this case, the court notes that Vermont state courts have discretion to order trial by jury even without a timely jury demand. *See* V.R.C.P. 39(b) ("Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."). Vermont's rule expressly refers to the court's "discretion," and is designed to be "in harmony with the general spirit of the rules to avoid technical results." V.R.C.P. 39(b) reporter's notes.

some recent prominent ERISA cases have been tried to juries. *See Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, No. 20-cv-7561 (S.D.N.Y. Apr. 23, 2025) (jury verdict finding damages exceeding $38 million); *Vellali v. Yale Univ.*, 662 F. Supp. 3d 238 (D. Conn. Mar. 17, 2023) (denying motion to strike jury demand).[7] But the court is not persuaded that this factor weighs strongly for or against relief from the waiver in this case.

### B. Parties' Assumptions Regarding Jury Trial

Defendants assert that "[t]his case has been litigated for more than two years on the understanding that it would be tried to the bench." (Doc. 105 at 8.) Nothing on the docket indicated a demand for a jury until Plaintiff filed the pending Motion for Jury Trial. There is no evidence suggesting any other reason why Defendants might have anticipated that a jury would be empaneled for trial in this case. Plaintiff has not stated what expectations he has had on this issue; the April 2026 Motion for Jury Trial appears to be the first filing in this case to raise the subject. The court concludes that this factor weighs against Rule 6 relief.

### C. Prejudice to Non-Moving Party

Prejudice to the opposing party is frequently considered the "most important" factor, *Sacerdote*, 2024 WL 4227186, at *4, and in this case, prejudice to the defense is the most salient issue as to whether any neglect on Plaintiff's part is excusable. Defendants assert that granting Plaintiff's motion would prejudice them because "[d]iscovery strategy, expert disclosures, and motion practice—including the pending class certification motion—have all been shaped by [the] expectation" that the case would be tried to the bench. (Doc. 105 at 8.) In support of that

---

[7] The *Vellali* jury ultimately entered a verdict in favor of the defendants. The plaintiffs appealed and the case remains under advisement with the Second Circuit. *See Vellali v. Yale Univ.*, No. 23-1082 (2d Cir. argued Sept. 25, 2024). On appeal, Yale seeks affirmance, but argues that if the Second Circuit remands, trial should be before the judge without a jury. Yale Br. at 72 (2d Cir. Mar. 8, 2024), ECF No. 100.

position, Defendants rely upon *Townsend v. Clairol Inc.*, where the Second Circuit held that the district court did not abuse its discretion in denying a late jury demand on grounds that "prejudice would likely result to the defendant if a jury trial were permitted at this point, since defendant engaged in litigation planning and strategy for over two years based on the understanding that the case would be heard by bench trial." 26 F. App'x 75, 78 (2d Cir. 2002) (summary order).

Plaintiff asserts that the defense claim of prejudice is "conclusory" and that, in the face of a burden to identify prejudice with specificity, "Defendants identify no discovery, additional witnesses, or altered expert scope that a jury would necessitate." (Doc. 112 at 5.) Plaintiff further notes that the case has yet to be certified as a class action and that "Defendants have not served any expert reports, deposed any of Plaintiff's experts, and no trial date has been set." (*Id.* at 6.)

The court agrees that Defendants have the burden to establish prejudice. *See, e.g.*, *Bolmeier v. N.Y. Waterway/E. River Ferry*, No. 18-CV-5488, 2025 WL 2779286, at *3 (E.D.N.Y. Sept. 30, 2025) ("As the party opposing an untimely jury request, Defendants bear the burden to show they would be harmed by the untimeliness of the request . . . ."). "Importantly, the relevant inquiry in analyzing the question of prejudice is 'not whether the opposing party will be prejudiced by a jury trial, but whether it will suffer prejudice as a result of the *late* demand for a jury trial.'" *Id.* (quoting *Encarnacion v. Isabella Geriatric Ctr.*, No. 11-Civ. 3757, 2014 WL 4494160, at *4 (S.D.N.Y. Sept. 11, 2014)). To carry that burden, Defendants must identify a "compelling and specific explanation as to how a jury trial would be prejudicial." *Id.* (quoting *Perelman ex rel. Perelman v. Camp Androscoggin Jr.-Sr., Inc.*, No. 06-CV-13020, 2008 WL 199475, at *3 (S.D.N.Y. Jan. 22, 2008)).

The Second Circuit's decision in *Townsend* is an example of a sufficient demonstration of prejudice connected to a late jury demand—at least sufficient to survive abuse-of-discretion review. Although the appellate decision does not specify what "litigation planning and strategy" was implicated by the distinction between a bench trial and a jury trial in that employment-discrimination case, those considerations were likely amplified in *Townsend*, where the plaintiff represented himself at trial. Moreover, the plaintiff in that case had also admitted that he "had no problem with a bench trial," which may have influenced the district court's analysis of the circumstances, and which prompted the Second Circuit to remark that the plaintiff's "appeal of the denial of his jury demand seems disingenuous." *Townsend*, 26 F. App'x at 78.

In contrast to *Townsend*, all parties in this case are represented by counsel, and the record reveals no affirmative statements from Plaintiff acceding to a bench trial. At the same time, Defendants have provided no specific details to support their assertion that "[d]iscovery strategy, expert disclosures, and motion practice" have been shaped by an expectation of a bench trial (Doc. 105 at 8). With significant issues of class certification and discovery still pending, and with no trial date on the horizon, the court is not persuaded that Defendants have met their burden to establish prejudice.

Based on a review of the relevant factors and all of the circumstances in this case, the court concludes that Plaintiff is entitled to relief under Rule 6(b)(1)(B) retroactively extending the time to file a jury demand. The court will not deny the Motion for Jury Trial on Defendants' waiver theory. It remains to consider the parties' dispute as to whether there is a right to a jury trial at all in this ERISA case.

## II. Right to Jury Trial in This ERISA Case

As Defendants correctly observe, ERISA "does not statutorily provide for trial by jury, either expressly or implicitly." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003). Plaintiff does not dispute that point, but instead asserts that the inquiry must proceed to whether there is a *constitutional* right to a jury trial in this case. (Doc. 112 at 6.) The court agrees. *See, e.g.*, *Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir. 2001) (where federal statute was silent as to right to a jury trial, court "must next consider whether a jury right inheres in the plaintiffs' claim by virtue of the Seventh Amendment"); *DeLeo v. City of Stamford*, 919 F. Supp. 70, 75 (D. Conn. 1995) ("In determining whether a plaintiff is entitled to a jury trial in a case arising under federal legislation, a court must first look to the statute. If the statute is silent regarding the right to a jury trial, the court must inquire whether the Seventh Amendment constitutionally mandates the right to a jury trial.").

The constitutional analysis begins with the applicable text of the Seventh Amendment: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. "In assessing whether a given statutory provision entitles a party to a jury trial under the Seventh Amendment, we look both [1] to the historical treatment of analogous cases and [2] to the type of remedy available to determine whether a cause of action is one of law (thus triggering the jury right) or one of equity (in which case no jury right is available)." *Havlish v. 650 Fifth Ave. Co.*, 934 F.3d 174, 183 (2d Cir. 2019) (alterations in original; quoting *Brown*, 250 F.3d at 126).[8] Although the first

---

[8] This two-step inquiry is referred to as the "*Granfinanciera* test," named for *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).

factor has been criticized[9] and generally receives less weight than the second factor,[10] both factors remain relevant under the *Granfinanciera* test. The court reviews them both here.

### A. Historical Treatment of Analogous Cases

The Seventh Amendment's application to "Suits at common law" refers "not merely [to] suits, which the *common* law recognized among its old and settled proceedings, but [to] suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998) (alterations in original; quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)). "The Seventh Amendment thus applies not only to common-law causes of action, but also to 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.'" *Id.* (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)).

ERISA is not a common-law cause of action. As to whether it creates statutory rights that are *analogous* to common-law causes of action in 18th century English law courts, the authorities favor Defendants' position. In *Tischmann v. ITT/Sheraton Corp.*, the court held that "no right to jury trial attaches" to claims for ERISA benefits because such claims "are inherently equitable in nature, not contractual." 145 F.3d 561, 568 (2d Cir. 1998) (citing *DeFelice v. Am.*

---

[9] *See Pereira v. Farace*, 413 F.3d 330, 337–38 (2d Cir. 2005) (noting that "[a]fter three decades of grappling with the law versus equity analysis, the late Justice William Brennan threw up his hands. He had wearied of 'rattling through dusty attics of ancient writs' and suggested that Seventh Amendment jurisprudence should sever its dependence on historical analogies to English common law as it existed in 1791" (quoting *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 574–75 (1990) (Brennan, J., concurring))).

[10] *See Pereira*, 413 F.3d at 339 (second factor is accorded "greater weight" and is the "more important" step of the analysis).

*Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 64 (2d Cir. 1997)). And as reaffirmed more recently, the "general rule" is that "breach of fiduciary duty claims were historically within the jurisdiction of the equity courts." *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005).

"The historical inquiry therefore weighs 'against a jury trial.'" *Popovchak v. UnitedHealth Grp. Inc.*, 692 F. Supp. 3d 392, 419 (S.D.N.Y. 2023); *see also, e.g.*, *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2018 WL 4279466, at *2 (S.D.N.Y. Sept. 6, 2018) ("[T]he first inquiry favors the conclusion that the claim for breach of the fiduciary duty of prudence asserted under section 404(a) of ERISA is equitable in nature."). However, as noted above, this historical inquiry is only one part—and a less weighty part—of the Seventh Amendment inquiry. The court therefore proceeds to consider the question of remedies.

**B. Type of Remedy Sought—Legal or Equitable?**

The second step of the analysis is an inquiry into "whether the 'type of relief [sought] was available in equity courts as a general rule.'" *Pereira v. Farace*, 413 F.3d 330, 339 (2d Cir. 2005) (alteration in original; quoting *Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir. 2003)). Referencing the complaint's request to recover "all losses," Plaintiff asserts that he is seeking a legal remedy: money damages. (Doc. 97 at 11.) In support, Plaintiff argues that *Pereira* is controlling and applies to ERISA claims. (*Id.* at 11–12.) Plaintiff acknowledges that some district courts have "reflexively [found] no right to a jury trial for ERISA claims across the board," but contends that those decisions are less persuasive than the decisions upholding a jury trial right in such cases, including *Cunningham* and *Pentegra*. (Doc. 97 at 12–13.) Defendants maintain that Plaintiff's request for monetary relief "does not transform his equitable claims into legal ones," and that the district court decisions granting jury trials in ERISA cases are "outliers." (Doc. 105 at 6, 12.)

### 1. *Pereira*

The court begins with *Pereira*, a case that arose out of a corporate bankruptcy. Acting on behalf of the bankrupt company, Trace International Holdings, Inc. ("Trace"), the bankruptcy trustee sued former Trace officers and directors for, among other things, "breach of fiduciary duty arising from their roles in Trace's financial demise." *Pereira*, 413 F.3d at 333. After denying the defendants' request for a jury trial, the district court conducted a bench trial and entered judgment against the defendants. *Id.* On appeal, the defendants challenged the denial of their request for a jury trial and the district court's finding that they breached their fiduciary duties. *Id.*

The *Pereira* court vacated and remanded the case for a jury trial. *Id.* at 343. Applying the two-step *Granfinanciera* test, the court concluded that the first step weighed against a jury trial because the common-law and statutory breach-of-fiduciary duty claims "would have been equitable in 18th century England." *Id.* at 339. At the second step, the *Pereira* court noted that the Trustee sought "compensatory damages"—"the classic form of *legal* relief." *Id.* Still, the Trustee's characterization of the claim was not dispositive; it was necessary to examine "what the claim for relief actually [was]." *Id.* (alteration in original; quoting *Pereira v. Cogan*, No. 00 CIV. 619, 2002 WL 989460, at *4 n.2 (S.D.N.Y. May 10, 2002)).[11] The district court reasoned that the Trustee was actually seeking restitution—a "legal" remedy "if ordered in a case at law," but an equitable remedy in the *Pereira* case because "[t]his is an equity case." *Pereira*, 2002 WL 989460, at *4.

---

[11] The need to determine the "actual" nature of the claim for relief makes sense. Otherwise, a party could override the *Granfinanciera* analysis and ensure a right to a jury trial simply by pleading that they sought "damages." *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78 (1962) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.").

The Second Circuit had a different view, concluding that "the district court improperly characterized the Trustee's damages as restitution." *Pereira*, 413 F.3d at 340. According to the *Pereira* court, a critical fact was that the defendants "never possessed the funds in question and thus were not unjustly enriched." *Id.* at 339. Whether the defendants possessed the funds at issue was a key distinction based on the Supreme Court's decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). The *Great-West* decision "reconfigured the legal landscape of restitution" because the Supreme Court explained in that case that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property *in the defendant's possession*." *Pereira*, 413 F.3d at 340 (emphasis in original; quoting *Great-West*, 534 U.S. at 214). Moreover, although *Great-West* involved only non-fiduciary defendants, the *Pereira* court concluded that it was "compelled to read *Great-West* as broadly as it is written." *Id.*

In a concurrence, Judge Newman wrote that the availability of a jury trial on a claim against a fiduciary for money damages for breach of fiduciary duties was "at odds with centuries of equitable proceedings." *Pereira*, 413 F.3d at 344 (Newman, J., concurring). Judge Newman wrote:

> It is literally black letter law, as set forth in the Restatement (Second) of Trusts, that remedies against a fiduciary, such as a trustee, are *exclusively equitable*, with an exception, inapplicable in the pending case, for recovery of (1) a fixed sum of money that the fiduciary is under a duty to pay immediately and unconditionally or (2) a chattel that the fiduciary is under a duty to transfer immediately and unconditionally.

*Id.* (emphasis added). As to the statement in *Great-West* indicating that restitution is an equitable remedy only if seeking "to restore to the plaintiff particular funds or property in the defendant's possession," Judge Newman observed that "[t]he statement is dictum with respect to an action against a fiduciary because the defendant in *Great-West* was not a fiduciary." *Id.*

at 346. Judge Newman nevertheless provided a concurring vote in *Pereira* because "the Supreme Court [in *Great-West*] has asserted that the availability of the jury turns on whether the funds being sought are in the defendants' possession, and I am obliged to follow that guidance." *Id.*

The types of relief sought in the complaint in this case are predominantly equitable. (*See* Doc. 1 at 45 (seeking declaratory relief, accounting, constructive trust, "surcharge," injunction, and "[o]ther equitable relief," including removal of fiduciaries).) But as the Supreme Court has explained, when a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Tull v. United States*, 481 U.S. 412, 425 (1987) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 (1974)). And here, Plaintiff also seeks "[a]ctual losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses," as well as an order:

> compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations.

(Doc. 1 at 45.) In the court's view, these are requests for remedies at law.[12] These requests do not seek recovery of some specifically identifiable funds in Defendants' control. As the court sees it, these are requests for compensation of loss due to Defendants' alleged breaches—i.e., damages.

---

[12] These requests seek relief under 29 U.S.C. § 1132(a)(2). That provision allows a plan participant to bring suit "for appropriate relief under section [1109]." *Id.* Section 1109(a), in turn, states in pertinent part that a breaching plan fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." That provision means that breaching fiduciaries are "personally liable *for damages*." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993) (emphasis added).

Referencing *Great-West*'s "reconfigure[ation]" of the landscape of restitution, the *Pereira* court reasoned that it was "compelled to read *Great-West* as broadly as it is written," and agreed with the defendants that "because they never possessed the funds in question and thus were not unjustly enriched, the remedy sought against them cannot be considered equitable." *Pereira*, 413 F.3d at 339–40. As Defendants correctly observe, *Pereira* was not an ERISA case. But this court has carefully considered *Pereira* because that case also involved fiduciary defendants accused of breaching their fiduciary duties. Absent an overruling of *Pereira* or expressly intervening Supreme Court precedent, this court concludes that *Pereira*'s logic applies equally in this case.

**2. *Amara***

The court pauses here to consider *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), and whether that might be an intervening Supreme Court decision impacting the analysis in *Pereira*. *Amara* was an ERISA case in which the district court found that the plan's disclosures regarding changes to the plan violated the plan's obligations under ERISA. *Id.* at 425. The district court then "ordered relief in two steps. Step 1: It ordered the terms of the plan reformed (so that they provided an "A plus B," rather than a "greater of A or B" guarantee). Step 2: It ordered the plan administrator . . . to enforce the plan as reformed." *Id.* at 435.

Analyzing whether the relief ordered was authorized by ERISA's section 502(a)(3), 29 U.S.C. § 1132(a)(3) ("appropriate equitable relief"), the Supreme Court concluded that the district court's affirmative and negative injunctions were traditional equitable remedies, and that "other relief ordered by the District Court resembles forms of traditional equitable relief." *Id.* at 440. In particular, as to the injunction requiring the plan administrator to pay already-retired beneficiaries money owed to them under the plan as reformed, the Supreme Court stated:

> [T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."

*Id.* at 441 (quoting *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 464 (1939)). Defendants assert that *Amara* "directly controls" in this case. (Doc. 105 at 12.)

The court is not persuaded that *Amara* undermines *Pereira*'s analysis of *Great-West*. The *Amara* decision does not cite *Great-West*, much less overrule it. Indeed, in a more recent case, the Supreme Court declined to adopt the suggestion that *Amara* overruled *Great-West*. *See Montanile v. Bd. of Trs. of Nat'l Elevator Industry Health Benefit Plan*, 577 U.S. 136, 148 n.3 (2016) ("[O]ur interpretation of 'equitable relief' in . . . *Great-West* . . . remains unchanged."). Moreover, the relevant relief actually at issue in *Amara* was an injunction requiring the plan administrator to pay already-retired beneficiaries money owed to them under the plan as reformed. Here, there is no express request for "reformation" of the plan. While some aspects of the requested relief are plainly the type of exclusively equitable relief mentioned in *Amara*—such as the request for a "surcharge"—the requests for Defendants to "make good" all losses and to pay "[a]ctual losses" (Doc. 1 at 45) are requests for damages.

### 3. *Bauer-Ramazani*

In an order issued after both the *Pereira* and *Amara* decisions, this court reviewed a motion to strike a demand for a jury trial in an ERISA case. Citing *Great-West*, the plaintiffs in *Bauer-Ramazani* argued that their requests for relief included a request for a legal remedy "because they are not seeking restitution of specific, traceable funds in Defendants' possession." *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.—Coll. Ret. & Equities Fund*, No. 09-CV-190, 2013 WL 6189802, at *11 (D. Vt. Nov. 27, 2013). The plaintiffs urged the court to

conclude that *Pereira* had recognized "that *Great-West* changed the analysis of whether a particular remedy is legal or equitable." Pls.' Opp'n at 6, No. 09-cv-190 (D. Vt. July 29, 2013), ECF No. 372. Judge Murtha was unpersuaded and granted the motion to strike, reasoning that *Great-West* was distinguishable because "[i]n that case there was no breach of fiduciary duty claim: the fiduciary itself was the plaintiff, suing a beneficiary." *Bauer-Ramazani*, 2013 WL 6189802, at *12. That written decision does not discuss or cite *Pereira*.

The *Pereira* decision itself recognized Judge Murtha's point, stating expressly that "*Great-West* involved only non-fiduciary defendants." *Pereira*, 413 F.3d at 340. But the *Pereira* court concluded that it was "compelled to read *Great-West* as broadly as it is written." *Id.* In this case, the court concludes that it cannot distinguish *Pereira*; although it was not in the ERISA context, that case also involved fiduciary defendants accused of breaching their fiduciary duties.

The court also notes that, in *Bauer-Ramazani*, the plaintiffs cited only a single case post-dating *Amara* for the proposition that, in the wake of *Great-West*, there is a right to a jury trial under ERISA § 504(a)(2). *See Bauer-Ramazani*, 2013 WL 6189802, at *11 n.7. That decision—*Healthcare Strategies, Inc. v. ING Life Insurance Annuity Co.*, No. 11-cv-282, 2012 WL 162361 (D. Conn. Jan. 19, 2012)—is among those relied upon by Plaintiff in this case. (*See* Doc. 97 at 13, 15.) However, as discussed below, more courts have weighed in since the *Healthcare Strategies* decision. Based on this court's analysis above and its review of other court decisions below, the court respectfully comes to a result different than that in *Bauer-Ramazani*.[13]

---

[13] This court's prior decision in *Bauer-Ramazani* is entitled to careful consideration, but it is not binding precedent. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a

**4. Other Cases**

Defendants acknowledge the existence of federal district court decisions that favor Plaintiff's position, but Defendants suggest that there are only a "handful" of such decisions, and that they are merely "outliers that have been widely criticized and expressly rejected." (Doc. 105 at 6.) Plaintiff disagrees, asserting that these other cases "correctly apply the Seventh Amendment's two-step test to claims seeking classic legal relief—money to compensate losses to the plan." (Doc. 112 at 7.) As the court sees it, there is a legitimate split of authority among the district courts on this issue. *See, e.g.*, *Popovchak*, 692 F. Supp. 3d at 420 (acknowledging split of authority; *Cunningham*, 2018 WL 4279466, at *4 (same). The court rejects Defendants' suggestion that the cases aligning with Plaintiff's position are outliers; instead, the court concludes that the current state of the law favors joining with those decisions.

Some of the cases supporting a jury trial are cited above—they include: *Pentegra*, 2023 WL 6237862; *Vellali*, 662 F. Supp. 3d 238; *Cunningham*, 2018 WL 4279466;[14] and *Healthcare Strategies*, 2012 WL 162361. Other courts have also reached the same conclusion. *See, e.g.*, *Garthwait v. Eversource Energy Co.*, No. 20-CV-00902, 2022 WL 17484817, at *2–3 (D. Conn. Dec. 7, 2022); *Phones Plus, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 06 CV 01835, 2008 WL 11377576, at *3–4 (D. Conn. Sept. 30, 2008); *Bona v. Barasch*, No. 01 Civ. 2289,

---

federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

[14] As noted in the parties' filings regarding supplemental authority (Docs. 131, 137), after the Supreme Court issued a decision restoring a previously dismissed "prohibited transaction" claim under 29 U.S.C. § 1106, *see Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), the district court in *Cunningham* denied a motion to strike the jury demand as to that restored claim. *Cunningham*, No. 16-cv-6525, 2026 WL 2269035 (S.D.N.Y. Aug. 6, 2026). Defendants correctly observe that there is no "prohibited transaction" claim in this case. (Doc. 137 at 1.) Nevertheless, the logic of Judge Castel's August 2026 decision applies equally to Plaintiff's claim in this case, and reviews and expands upon the analysis in the 2018 decision.

2003 WL 1395932, at *33–35 (S.D.N.Y. Mar. 20, 2003).[15] Plaintiff has also cited the decisions of multiple courts outside the Second Circuit reaching similar conclusions as to the impact of *Great-West* on the right to jury trials in ERISA cases. (*See* Doc. 97 at 12–13.)

The court acknowledges that there are multiple district court decisions that reach a contrary conclusion. The court in *Harris v. Sheet Metal Workers' National Pension Fund* classified the decisions in *Cunningham* and *Garthwait* as "outliers" that "have been the subject of criticism." No. 24-CV-1219, 2024 WL 4697447, at *1 (S.D.N.Y. Nov. 6, 2024). This court agrees that other district courts have come to contrary conclusions. *See Popovchak*, 692 F. Supp. 3d at 420 (citing cases). Respectfully, this court is not persuaded that *Cunningham* and *Garthwait* are outliers, particularly in light of the force of analysis presented in those decisions and in the others cited above.

Notably, the *Harris* court's analysis did not require actually rejecting the *Cunningham* and *Garthwait* decisions because the court in *Harris* was able to distinguish those cases. The plaintiff in *Harris* was seeking ERISA benefits, not "make good" claims seeking to hold defendants personally liable for compensatory damages. *Harris*, 2024 WL 4697447, at *1. The court in *Popovchak* granted a motion to strike the jury demand, but did so without prejudice because the court found it unclear at that stage of the case whether the plaintiffs were seeking legal damages for their fiduciary-duty claims. *Popovchak*, 692 F. Supp. 3d at 420. Defendants cite decisions from district courts outside the Second Circuit (*see* Doc. 105 at 10), but the district courts in those cases did not have to contend with *Pereira* as binding authority. *See Reed v.*

[15] *Bona* was decided before the Second Circuit's *Pereira* opinion, but after the district court decision that the Second Circuit reviewed in *Pereira*. Perhaps foreshadowing the Second Circuit's decision, the *Bona* court observed that the district court decision "appears to be at odds with *Great-West*." *Bona*, 2003 WL 1395932, at *35.

*MedStar Health, Inc.*, No. 20-1984, 2023 WL 5154507, at *6 (D. Md. Aug. 10, 2023) ("[U]nlike the court in *Cunningham*, this court is not bound to follow *Pereira*." (quoting *Williams v. Centerra Grp., LLC*, 579 F. Supp. 3d 778, 785 (D.S.C. 2022))).

For the reasons discussed above, the first factor of the Seventh Amendment analysis weighs against a jury trial, but the second, more important, factor weighs in favor of a jury trial. The court's conclusion on the second factor is informed by the *Pereira* decision, the logic of which applies with equal force in this ERISA case. The other cases upon which Defendants rely do not compel a contrary conclusion.

**Conclusion**

Plaintiff's Motion for Jury Trial (Doc. 97) is GRANTED. Any trial in this case will be heard by a jury.

Dated at Burlington, in the District of Vermont, this 12th day of November, 2026.

Geoffrey W. Crawford, Judge
United States District Court